<u>NOT FOR PUBLICATION</u>

<u>UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY</u>

_____

MICHAEL C. BURNS,

    Plaintiff,

    v.

WARDEN JUEL E. COLE, et al.,

    Defendants.

_____

Civil Action No.
08-4807 (RMB), and
Civil Action No.
08-4843 (RMB**)**

**O P I N I O N**
**APPLIES TO**
**BOTH ACTIONS**


**APPEARANCES:**

  MICHAEL C. BURNS, Plaintiff <u>pro se</u>
  Burlington County Jail
  P.O. Box 6000
  Mount Holly, New Jersey 08060

**<u>Renée Marie Bumb</u>**, District Judge:

  On September 22, 2008, Plaintiff MICHAEL C. BURNS ("Plaintiff"), an inmate currently confined at Burlington County Jail, submitted for filing his complaint docketed in the Civil Action No. 08-4807 ("08-4807 Complaint") seeking to bring a civil rights action <u>in forma pauperis</u> pursuant to 42 U.S.C. § 1983 and alleging violations of his constitutional rights.  <u>See</u> Civil Action No. 08-4807, Docket Entry No. 1.  Since Plaintiff failed to file his complete application to prosecute Civil Action No. 08-4807 <u>in forma pauperis</u>, the Court denied Plaintiff's request to proceed in

that matter without prepayment of his filing fee or submission of
his complete in forma pauperis application; the denial was without
prejudice, and an appropriate order was issued in the morning of
October 1, 2008.  See id., Docket Entry No. 2.  In the afternoon of
the same day, that is, on October 1, 2008, the Clerk docketed
another civil rights action by Plaintiff; the complaint in that
action was accompanied by an equally deficient in forma pauperis
application.  See Civil Action No. 08-4843, Docket Entry No. 1.

On October 10, 2008, the Clerk received a letter from
Plaintiff requesting "consolidation" of Civil Actions Nos. 08-4807
and 08-4843; the Clerk duly docketed the letter in both matters.
See Civil Action No. 08-4807, Docket Entry No. 3; Civil Action No.
08-4843, Docket Entry No. 2.  Four days later, on October 14, 2008,
the Clerk received Plaintiff's prison account statement curing the
deficiencies of Plaintiff's application to proceed in forma
pauperis for the purposes of both actions.  See Civil Action No.
08-4807, Docket Entry No. 5; Civil Action No. 08-4843, Docket Entry
No. 4.

Two days passed by.  On October 16, 2008, the Clerk received
another Plaintiff's letter requesting, one more time, termination
of Civil Action No. 08-4843.  See Civil Action No. 08-4843, Docket
Entry No. 3.  On the same day, the Clerk received Plaintiff's
amended complaint ("Complaint") in Civil Action No. 08-4807; the
Complaint was, apparently, intended to supercede Plaintiff's

original 08-4807 Complaint.  See Civil Action No. 08-4807, Docket
Entry No. 4.

Based on Plaintiff's affidavit of indigence and the absence of
three qualifying dismissals within 28 U.S.C. § 1915(g), the Court
will grant Plaintiff's application to proceed in forma pauperis,
pursuant to 28 U.S.C. § 1915(a) (1998), in Civil Action No. 08-
4807, and will order the Clerk of the Court to file Plaintiff's
Complaint in that matter and to terminate Civil Action No. 08-4843,
as duplicative, without assessing a filing fee with respect to
Civil Action No. 08-4843.[1]

At this time, the Court must review the Complaint pursuant to
28 U.S.C. §§ 1915(e)(2) and 1915A to determine whether it should be
dismissed as frivolous or malicious, for failure to state a claim
upon which relief may be granted, or because it seeks monetary
relief from a defendant who is immune from such relief.  For the
reasons set forth below, the Court concludes that the Complaint
should be dismissed for failure to state a claim upon which relief
may be granted.

---

[1]  In addition to the actions discussed in this Opinion and
initiated by Plaintiff during September and October of 2008,
Plaintiff has initiated four other actions in this District:
1.  Burns v. Taylor, 08-03318 (RMB), initiated on 07/03/08;
2.  Burns v. Taylor, 08-03345 (RMB), initiated on 07/07/08
    (closed on 07/11/08, as duplicative of Burns v. Taylor,
    08-03318 (RMB));
3.  Burns v. Taylor, 08-04234 (JBS), initiated on 07/03/08; and
4.  Burns v. Cole, 08-5070 (NLH), initiated on 10/15/2008.

I.   **PLAINTIFF'S INSTANT ALLEGATIONS**

Plaintiff's submission begins with another letter requesting "consolidation" of Civil Actions Nos. 08-4807 and 08-4843, see id. at 1, and then provides the Court with two pages, one and a half of which contain names and prison numbers of certain inmates.  See id. at 2-3.

The Complaint follows the above and begins with a page long caption, naming the following seventeen persons and entities as Defendants in this action: (1) warden Juel E. Cole; (2) deputy warden Cox; (3) Captain McDonnall; (4) Lieutenant Barnwell; (5) Lieutenant Larkins; (6) Sergeant Reid; (7) Sergeant John Doe; (8) correctional officer Javier; (9) correctional officer Miller; (10-12) correctional officers John Does 1-3; (13) social worker Brown; (14) social worker Peoples; (15) Burlington County Freeholders; (16) Burlington County itself; and (17) Burlington County Department of Corrections.  See Compl. (Civil Action No. 08-4807, Docket Entry No. 4) at 4.  The page following the caption is dedicated to the "Preliminary Statement" section of the Complaint; that section informs the Court that Plaintiff brings this action "on behalf of himself and all other similarly situated individuals," hence suggesting that Plaintiff intends to initiate a class action, perhaps on behalf of the inmates whose names are stated in the list preceding the Complaint.  See id. at 5.

The next two pages advise the Court as to the jurisdictional

Page  -4-

bases asserted by Plaintiff.  <u>See</u> <u>id.</u> at 5-8.

The "Factual Allegations" section is next; it summarizes Plaintiff's allegations as follows: "Defendants . . . [d]eliberate [i]ndifference to [u]nreasonable and known dangers to the health and safety of Plaintiff; unreasonable search and seizure; access to the courts."  Compl. at 4.  The section continues with generic allegation, <u>see</u> <u>id.</u> at 4-5; these generic allegation are later on supplemented by more a detailed account set forth in the next section, titled "Facts Directly Pertaining to Plaintiff."  <u>See</u> <u>id.</u> at 5-11.  The aforesaid is followed by Plaintiff's six "Counts" presented in a set of patchy statements that often repeat or paraphrase one another; these statements seem to assert that Defendants' actions violated Plaintiff's First, Fourth and Eighth Amendment rights.  <u>See</u> <u>id.</u> at 11-20.  The Complaint closes with a "prayer for Relief" requesting a panoply of preliminary injunctions, declaratory judgments, unspecified monetary damages, as well as legal costs and attorney fees, even though Plaintiff is proceeding in this matter <u>pro</u> <u>se</u>.  <u>See</u> <u>id.</u> at 20-21.

## II.   <u>STANDARD OF REVIEW</u>

In determining the sufficiency of a complaint, the Court must be mindful to construe the facts stated in the complaint liberally in favor of the plaintiff.  <u>See</u> <u>Haines v. Kerner</u>, 404 U.S. 519 (1972); <u>United States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992).  The Court should "accept as true all of the [factual] allegations in

the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). While a court will accept well-pled allegations as true, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. See id.

The Court of Appeals for the Third Circuit recently provided a detailed and highly instructive guidance as to what kind of allegations qualify as pleadings sufficient to pass muster under the Rule 8 standard. See Phillips v. County of Allegheny, 515 F.3d 224, 230-34 (3d Cir. 2008). The Court of Appeals guided as follows:

> [There are] two new concepts in Twombly [127 S. Ct. 1955 (2007)]. First, . . . "[w]hile a complaint . . . does not need detailed factual allegations, a plaintiff's [Rule 8] obligation [is] to provide the 'grounds' of his 'entitle[ment] to relief' [by stating] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." Twombly, 127 S. Ct. at 1964-65 . . . Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." Id. at 1965 n.3. . . . "[T]he threshold requirement of Rule 8(a)(2) [is] that the 'plain statement [must] possess enough heft to 'sho[w] that the pleader is entitled to relief.'" Id. at 1966. [Hence] "factual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965 & n.3. Second, the Supreme Court disavowed certain language that it had used many times before -- the "no set of facts" language from Conley. See id. at 1968. . . .
>
> [T]he Twombly decision focuses our attention on the "context" of the required short, plain statement. Context matters in notice pleading. . . . [Thus,] taking Twombly and the Court's contemporaneous opinion in Erickson v. Pardus, 127 S. Ct. 2197 (2007), together, we understand the Court to instruct that a situation may arise where .

> . . the factual detail in a complaint is so undeveloped
> that it does not provide a defendant the type of notice
> of claim which is contemplated by Rule 8.  See Airborne
> Beepers & Video, Inc., v. AT&T Mobility L.L.C., 499 F.3d
> 663, 667 (7th Cir. 2007). . .  . . After Twombly, it is no
> longer sufficient to allege mere elements of a cause of
> action; instead "a complaint must allege facts suggestive
> of the proscribed conduct."  Id. . . . .

Phillips, 515 F.3d at 230-34 (original brackets removed).

### III. CLASS ACTION ASPECT

Plaintiff's Complaint cannot be deemed a pleading submitted by a class of plaintiffs, same as it cannot be construed as an application for certification of a certain putative class.  The deficiencies of the class action aspect are too extensive to be discussed at length in the instant Opinion; it shall suffice to note that the case cannot proceed as a class action since: (1) the class action aspect is barely asserted, and Plaintiff is the sole person who actually signed the Complaint, who is actually named as plaintiff in the caption of the Complaint and who has expressed willingness to be bound by this Court's findings; (2) Plaintiff is the sole person who submitted his application to proceed in this matter in forma pauperis and against whom the entire filing fee will be assessed; (3) the Complaint sets forth fact-specific allegations solely with respect to Plaintiff, hence preventing the Court from conducting any intelligent Rule 23 analysis with respect to the commonality, typicality and other requirements posed by the Rule; and (4) numerous considerations pertaining to class actions brought by prisoners or pretrial/civil detainees prompt this Court

against class certification.  See, e.g., Glenn v. Hayman, 2007 U.S. Dist. LEXIS 6898, at *5-22 (D.N.J. Jan. 30, 2007), and Glenn v. Hayman, 2007 U.S. Dist. LEXIS 20092, at *13-27 (D.N.J. Mar. 20, 2007) (detailing Rule 23 requirements and considerations pertinent to inmates' class actions); see also Banda v. Corzine, 2007 U.S. Dist. LEXIS 80932, at *44-63 (D.N.J. Nov. 1, 2007) (same).  The Court, therefore, construes the Complaint as Plaintiff's pleading for all purposes of the Court's instant review.

**IV.  DISCUSSION**

    A.  FOURTH AMENDMENT CLAIM

The first paragraph in the "Factual Allegations" section of the Complaint reads as follows:

> The Burlington County Jail (BCJ) and officials allow strip searches and visual body cavity searches as [part of the] procedure [employed] when inmates [register] in the BJC.  That is done without showing of suspicion that a detainee was harboring contraband on or in his or her body.

Compl. ¶ 21.[2]  The "Facts Directly Pertaining to Plaintiff" section elaborates on this allegation:

> On September 9, 2008, Plaintiff was transferred from the Camden County Correctional to the BCJ . . . .  Upon entry into the BCJ, Plaintiff was "pat" searched [same as other inmates who arrived to BCJ].  The pat search did not produce any contraband or reasonable suspicion. Plaintiff was placed into a "holding cell" [same as other inmates who arrived to BCJ.  After that,] Plaintiff was

---

[2] In his Burns v. Taylor, 08-04234 (JBS), initiated on 07/03/08, Plaintiff also fosters a claim based on allegedly illegal strip search; that claim is asserted against the prison officials at his previous place of confinement, at Mount Holly.

ordered into a shower stall [and directed] to remove all [his] clothing. [Defendant Javier] then conducted a visual inspection of Plaintiff's body [directing, <u>inter alia</u>,] Plaintiff to lift his genitalia [and] to bend [forward] and spread his buttocks [for] Javier['s] visual inspection of Plaintiff's anus. [Other inmates who arrived to BCJ] received the same treatment.

<u>Id.</u> ¶¶ 33(a)-33(j).

Plaintiff asserts that the above-described search violated his Fourth Amendment rights to "bodily privacy" and to being protected against "unreasonable search and seizures."[3]  Compl. at 12-14. Plaintiff, however, errs.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. CONST. amend. IV.  Reasonableness under the Fourth Amendment "depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." <u>Skinner v. Ry. Labor Executives' Ass'n</u>, 489 U.S. 602, 618 (1989) (quoting <u>United States v. Montoya de Hernandez</u>, 473 U.S. 531, 537 (1985)).  Thus, the permissibility of a particular practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against the "promotion of legitimate governmental interests" implicated by the search.  <u>Id.</u> at 619 (quotation marks and internal citation omitted).

In <u>Hudson v. Palmer</u>, 468 U.S. 517, 530 (1984), a prisoner

---

[3] This Court is not entirely clear as to what was seized as a result of Plaintiff's examination conducted by Defendant Javier.

argued that a cell search conducted to harass him was unreasonable because a prisoner has a reasonable expectation of privacy not to have his cell, locker, personal effects, person invaded for such a purpose. See id. at 529. The Supreme Court rejected the claim because "prisoners have no legitimate expectation of privacy." Id. at 530. The Court observed that:

> A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order. . . . [S]ociety would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security. . . . [I]t is accepted by our society that loss of freedom of choice and privacy are inherent incidents of confinement.

Id. at 527-28 (footnotes, citations and internal quotation marks omitted). The same conclusion was reached even with respect to detainees other than convicted prisoners. See Bell v. Wolfish, 441 U.S. 520, 558-560 (1979) (finding that a body cavity searches of pretrial detainees do not violate the Fourth Amendment).[4]

Given the holding of Hudson and Wolfish, this Court will dismiss Plaintiff's claims based on the allegedly "illegal" search, since Plaintiff's expectation of privacy yields to the prison officials' legitimate governmental interests to ensure that the

---

[4] The Wolfish Court determined that strip searches might be valid even if the inmate was in full custody of the facility before the search was conducted, e.g., if an inmate has a visitor, a body cavity search might be warranted even if prison officials were present during the visit.

inmates arriving to the facility do not introduce any contraband in the facility, and it remains free of weapons, controlled substances and other prohibited items.[5]

That said, certain searches may violate the Eighth Amendment. See Hudson, 468 U.S. at 530 (discussing searches conducted as "calculated harassment unrelated to prison needs"); Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185, 189 (D.N.J. 1993) (same); see also Scher v. Engelke, 943 F.2d 921, 923-24 (8th Cir. 1991) (finding that ten searches of an inmate's cell within a nineteen-day period constituted "cruel and unusual punishment"), cert. denied, 503 U.S. 952 (1992); but see Proudfoot v. Williams, 803 F. Supp. 1048 (E.D.

_____

[5] The reasonableness standard requires "a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Wolfish, 441 U.S. at 559. In Plaintiff's case, the search was conducted in a non-intrusive fashion (i.e., Defendant Javier conducted a visual examination without touching Plaintiff's body) and for an obvious justification: the facility needed to ensure that the new arrivals were not carrying contraband. Plaintiff's assertion that the prison officials had no right to conduct a visual inspection of Plaintiff's body because the pat-down search did not produce any contraband or "reasons for suspicion" defies logic. A pat-down search, by definition, cannot reveal any contraband hidden in an inmate's genital area or anus, unless the pat-search is conducted in an illegally intrusive manner. Hence, a "reasonable suspicion" that an inmate is concealing contraband in his genital area or anus could occur as a result of a pat-down search only if the prison officials observe the inmate actually tackling the contraband into his anus or genital area. In any other scenario, it appears self-evident that a contraband item well-concealed in the inmate's anus/genital area prior to the inmate's pat-search would necessarily be left unaffected and undetected by such pat-search.

Pa. 1992) (finding that three searches within fourteen days did not violate Eighth Amendment when each search was made for a legitimate purpose).

Here, Plaintiff mentions "*numerous* violations of his rights" in the context of the facility's search procedures, but does not detail either the number, or frequency or circumstances of these allegedly additional searches. See Compl. ¶ 43. This Court, therefore, will dismiss Plaintiff's strip search claim without prejudice to Plaintiff's amendment of his pleading with respect to these additional searches, if any.

### B.   FIRST AMENDMENT CLAIMS

#### 1.   Access to the Courts Allegations

##### a.   Phone Calls to Courts

Plaintiff asserts that, on September 11, 2008 (that is, upon Plaintiff's arrival to the BCJ), Plaintiff contacted a social worker employed at the facility with a request to make "legal phone calls." Compl. at 6.   The social worker allowed Plaintiff to call Plaintiff's counsel but refused Plaintiff's requests to contact:

(a)   Mount Laurel Municipal Court (with regard to "pending appeal" and "transcript request");
(b)   Superior Court of New Jersey, Appellate Division (with regard to "pending appeal" and "switch appeal to emergent relief");
(c)   Municipal Division Manager at the Superior Court of New Jersey, Law Division, Burlington County (with regard to "transcript request," "appeal," "emergent relief" and "filing requirements for a writ of habeas corpus");
(d)   an unnamed judge presiding over Plaintiff's unspecified matter pending in Burlington County municipal court (with regard to "transcript request," "appeal," and "emergent relief");

```
(e)  Criminal Division Manager at the Superior Court of New Jersey,
     Law Division, Burlington County (with regard to "transcript
     request," "appeal," "emergent relief" and "filing requirements
     for a writ of habeas corpus");
(f)  an unnamed judge presiding over Plaintiff's unspecified matter
     pending on the docket of the Superior Court, Law Division,
     Burlington County (with regard to "transcript request,"
     "appeal," "emergent relief" and "filing requirements for a
     writ of habeas corpus").
```

Compl. at -7.

The social worker, however, advised Plaintiff that the warden and the Freeholders of Burlington County adopted a policy preventing direct contacts between inmates and courts.  See id. at 7-8.

### b.  Law Library

Plaintiff further asserts that the law library at the facility is insufficient because: (1) each inmate is allowed two one-hour sessions per week; (2) the library has only one photocopier and one "functional" typewriter.[6]  See id. at 8.

### c.  Legal Mail

Finally, Plaintiff asserts that his access to legal mail is also unduly "restricted" because "there are often *vast* delays in receiving mail."  Id. at 8 (emphasis supplied).  By way of example of such "vast delays," Plaintiff describes his experience with a certain letter mailed to him, which was received by the Postal Service on September 25, 2008, and handed to Plaintiff on October 1, 2008, i.e., which was in transit for three full business days and

---

[6] The Complaint is silent as to the total number of typewriters at the library or as to Plaintiff's understanding of the word "functional."

two weekend days.  See id.  In addition, Plaintiff asserts that the mail access is unduly "restricted" because mail is not being delivered to him on Saturdays.  See id.

### d.  "Prejudice Received"

Plaintiff concludes his access-to-the-courts allegation with a section titled "Prejudice Received"; the section asserts that:

(a)  Plaintiff is currently incarcerated.

(b)  Plaintiff believes that this incarceration is illegal.

(c)  Plaintiff believes that his incarceration "could have been limited by virtue of a [w]rit of [h]abeas [c]orpus, having the municipal court expedite the transcript request, involving the Municipal Court [p]residing [j]udge, involving the Municipal Court Division Manager," etc.

(d)  Plaintiff believes that, if his telephone calls to the courts were not denied and his letters would be delivered without "vast delays," he would have been already released from custody.

Compl. at 8-9.

### 2.   Plaintiff's Allegations Fail to State a Claim

### a.   Failure to Assert an Actual Injury

Courts have recognized different constitutional sources for the right of access to the courts.  Principally, the right of access to the courts derives from the First Amendment's right to petition and the due process clauses of the Fifth and Fourteenth Amendments.[7]

_____

[7]  The right of access to the courts is an aspect of the First Amendment right to petition.  See McDonald v. Smith, 472 U.S. 479, 482 (1985); Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).  The Supreme Court also found that "[t]he

A prisoner alleging a violation of his right of access to the courts must show that prison officials caused him past or imminent "actual injury" by hindering his efforts to pursue such a claim or defense.  See Lewis v. Casey, 518 U.S. 343, 348-51, 354-55 (1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997).  "He might show, for example, that a *complaint he prepared was dismissed* for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known.  Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was *unable to file even a complaint.*"  Lewis, 518 U.S. at 351 (emphasis supplied).

In Christopher v. Harbury, 536 U.S. 403 (2002), the Supreme Court explained that the plaintiff specifically state in the complaint the underlying claim in accordance with the requirements of Rule 8(a) of the Federal Rules of Civil Procedure to the same degree as if the underlying claim was being pursued independently.

---

constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights."  Procunier v. Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989); see also Hudson v. Palmer, 468 U.S. 517, 523 (1984); Bounds v. Smith, 430 U.S. 817 (1977); Wolff v. McDonnell, 418 U.S. 539, 576 (1974). The right of access to the courts might also arise under the Sixth Amendment's right to counsel; however, under the circumstances of the present case, the Sixth Amendment clearly is not implicated.

See <u>Christopher</u>, 536 U.S. at 417.  In this regard, the statement must be sufficiently specific to ensure that the district court can ascertain that the claim is not frivolous and that the "the 'arguable' nature of *the underlying claim is more than hope*."  <u>Id.</u> (emphasis supplied).

Here, Plaintiff's "Prejudice Received" allegations fail to plead the claims or defenses that he allegedly lost in accordance with Rule 8 requirements; rather, his allegations consist of nothing but exponential layers of hope.  No statement made in the Complaint indicates that any Plaintiff's claim or defense was denied with prejudice on grounds of untimeliness or lack of transcripts, or for failure to adhere to a certain technical rule: all Plaintiff asserts here is his conjecture that he lost a chance to obtain, hypothetically sooner, a hypothetical relief.  However, these allegations cannot qualify as an "actual injury," <u>see</u> <u>Christopher</u>, 536 U.S. 403; <u>Lewis</u>, 518 U.S. at 348-51, 354-55 (1996); <u>Oliver v. Fauver</u>, 118 F.3d 175, 177-78 (3d Cir. 1997), since this Court's legal "adjudication cannot rest on any such 'house that Jack built' foundation."  <u>Salyer Land Co. v. Tulare Lake Basin Water Storage Dist.</u>, 410 U.S. 719, 731 (1973).

### b.   Failure to State a Cognizable Law Library or Legal Mail Claim

For the same reason Plaintiff's allegations related to the law library fail to state a claim.  In <u>Bounds v. Smith</u>, 430 U.S. 817, 828 (1977), the Supreme Court held that "the fundamental

constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. 817, 828 (1977).

> Bounds did not create an abstract, freestanding right to a law library or legal assistance, [and] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. . . . [T]he inmate therefore must . . . demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a [non-frivolous] legal claim.

Lewis, 518 U.S. at 351.

Here, Plaintiff's generic injury allegations prevent the Court from establishing that Plaintiff had and lost an actual non-frivolous legal claim/defense, and Plaintiff's generic allegations based on the two-hours-per-week library schedule prevent this Court from establishing that the alleged schedule caused Plaintiff loss of an such claim/defense through Plaintiff's inability to obtain the necessary legal information during the library hours allotted: Plaintiff is merely asserting that he is displeased with the shortness of his library time.  However, such allegations are insufficient.  See Christopher, 536 U.S. 403; Lewis, 518 U.S. at 348-51, 354-55 (1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997).

Analogously, Plaintiff's generic allegations that the law

library has only one photocopier and one "functional" typewriter appear to be exactly the type deemed invalid in Lewis, 518 U.S. at 351, i.e., Plaintiff merely expresses his opinion that the facility's law library "is subpar in some theoretical sense," and that Plaintiff believes that a "good" library should be furnished with multiple copiers and typewriters.  However "there is no First Amendment right to [services such as] photocopying.  [Instead], the inmates must point to evidence of actual . . . interference with access to the courts,"[8] Reynolds v. Wagner, 128 F.3d 166, 183 (3d Cir. 1997), rather than to their displeasure with limited amenities.

Similarly, Plaintiff's generic assertion that his access to legal mail is unduly "restricted" because "there are often vast delays in receiving mail" fails to state a claim.  See Ruiz v. United States, 160 F.3d 273, 275 (5th Cir. 1998) (to state a claim based on delay or interference with the mail, a plaintiff must show actual injury).  The mere fact that a certain piece of mailing spent five days in transit and ended up in the hands of the prisoner on the seventh day from the date when the sender deposited it in a mail box cannot qualify as a violation of constitutional magnitude.  Compare Simkins v. Bruce, 406 F.3d 1239, 1243 (10th Cir. 2005) (delaying delivery of plaintiff's legal mail for over a year would

---

[8]   E.g., Plaintiff can point out to his claim/defense that was actually dismissed by a court on the grounds that Plaintiff's papers were handwritten rather than typed, or on the basis that these papers arrived to the court unaccompanied by copies of the documents Plaintiff had in his possession but was unable to copy.

violate an inmate's right of access to courts).  Stripped from a
showing of a specific and actual injury, a generic challenge to the
mailing process, same as a generic assertion that mail is not being
delivered on Saturdays, as Plaintiff desires, fails to state a
cognizable claim.  Accord <u>Richardson v. Morris County Corr.</u>
<u>Facility</u>, 2006 U.S. Dist. LEXIS 76475, at *19 (D.N.J. Oct. 19, 2006)
("Delay of legal mail for four or five days on weekends or holiday
weeks is not such an inordinate delay as to be a constitutional
violation").

### c.  Failure to State a Claim Based on Lack of Legal Phone Calls

In the same vein, Plaintiff's allegations that his access-to-
the-courts rights were violated by the facility's policy preventing
direct contacts with the courts fail to state a claim upon which
relief may be granted.

Inmates could be afforded reasonable access to telephones so
as not to infringe the First Amendment or impede meaningful access
to the courts in violation of the Fourteenth Amendment.  See <u>Inmates</u>
<u>of Allegheny County Jail v. Wecht</u>, 565 F. Supp. 1278, 1284 (E.D. Pa.
1983); <u>Owens-El v. Robinson</u>, 442 F. Supp. 1368, 1386 (W.D. Pa.
1978), <u>aff'd in part and vacated in part on other grounds sub nom.</u>,
<u>Inmates of Allegheny County Jail v. Pierce</u>, 612 F.2d 754 (3d Cir.
1979).  Nonetheless, inmates' rights to communicate, even with legal
counsel, are not unlimited.  See <u>Aswegan v. Henry</u>, 981 F.2d 313 (8th
Cir. 1992).  Prison officials can limit communications, particularly

telephone communications, to ensure safety, security, and the orderly operations of their institution. See Griffin-El v. MCI Telecommunications Corp., 835 F. Supp. 1114, 1122-23 (E.D. Mo. 1993), aff'd, 43 F.3d 1476 (8th Cir. 1994).

In describing the scope of services which must be provided by the state to indigent prisoners, the Supreme Court has stated, "[i]t is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them. . . . This is not to say that economic factors may not be considered, for example, in choosing the methods used to provide meaningful access." Bounds, 430 U.S. at 824-25.  "[P]rison administrators are not required to adopt every proposal that may be thought to facilitate prisoner access to the courts.  The extent to which that right is burdened by a particular regulation or practice must be weighed against the legitimate interests of penal administration and the proper regard that judges should give to the expertise and discretionary authority of correctional officials." Procunier, 416 U.S. at 420.  "Therefore, in evaluating plaintiffs' claims that the current inmate telephone system and policies unreasonably restrict their access to the courts and counsel, the [c]ourt [should] consider the measures provided  by the prison for ensuring access as a whole." Wooden v. Norris, 637 F. Supp. 543, 553 (M.D. Tenn. 1986).

Here, Plaintiff's Complaint asserts that Plaintiff's rights were violated by the facility's denial to accommodate Plaintiff's desire to have a multitude of phone calls to various judges and Clerk's Office personnel.  However, the facility could indeed consider both the economic aspect of such numerous phone calls, as well as numerous legal problems posed by direct contacts between inmates and judges/court officials, see Pliler v. Ford, 542 U.S. 225, 231-32 (2004) ("[J]udges have no obligation to act as counsel or paralegal to pro se litigants") (citing Martinez v. Court of Appeal of Cal., Fourth Appellate Dist., 528 U.S. 152, 162) (2000), and McKaskle v. Wiggins, 465 U.S. 168, 183-84 (1984)); Knop v. Johnson, 977 F.2d 996, 1011 (6th Cir. 1992)("Ex parte communications from a judge's chambers to one side in a contested lawsuit are 'clearly at odds with our adversary system of justice'") (quoting Price Bros. Co. v. Philadelphia Gear Corp., 649 F.2d 416, 425 (6th Cir. 1981)); Johansen v. San Diego Police Dep't, 2008 U.S. Dist. LEXIS 3670, at *5-6 (S.D. Cal. Jan. 16, 2008) (expresslyforbidding a pro se litigant to place unauthorized telephone calls to a judge); Nutter v. Wefald, 1997 U.S. Dist. LEXIS 21862, at *9 (D. Kan. Dec. 31, 1997) (discussing usage of the court's contempt powers for the purposes of deterring a pro se litigant's telephonic contact with the court), and determine that the alternative means of communications with the courts, such as mail, were sufficient.  See Robbins v. South, 595 F. Supp. 785, 789-90 (D. Mont. 1984) (policy

requiring inmates to obtain prior written authorization to telephone their attorney and limiting those calls to one per week found reasonable in light of inmates' ability to correspond with attorney through mail and during prison visit); Pino v. Dalsheim, 558 F. Supp. 673, 675 (S.D.N.Y. 1983) (unlimited mail communication with attorney constitutionally sufficient because state is not required to provide best manner of access); Sellers v. Roper, 554 F. Supp. 202, 208 (E.D. Va. 1982) (detainee who did not allege that mail was inadequate or that he had a special need for access to telephone not denied meaningful access to courts); see also Lock v. Jenkins, 464 F. Supp. 541, 551 (N.D. Ind. 1978), aff'd in part and rev'd in part on other grounds, 641 F.2d 488 (6th Cir. 1981) (restricting detainee to one collect call per week to attorney and immediate family not unconstitutional in light of security concerns of prison officials); Moore v. Janing, 427 F. Supp. 567, 576-77 (D. Neb. 1976) (three five-minute calls per week during stated hours not unreasonable in light of interest of prison officials in maintaining order, security and discipline); Inmates of Milwaukee County Jail v. Petersen, 353 F. Supp. 1157, 1165, 1169 (E.D. Wis. 1973) (policy requiring detainees to obtain written authorization to call attorney or immediate family in emergency not unreasonable in light of mail communication, physical limitations of facility, and large numbers of inmates to be accommodated); accord Bounds, 430 U.S. at 830 ("Any plan . . . must be evaluated as a whole to ascertain its compliance

with constitutional standards").

Here, Plaintiff's allegations do not indicate that Plaintiff was either restricted in his telephonic contacts with his attorney and or was limited in his ability to write and receive legal mail. Rather, Plaintiff's allegations are limited to his displeasure with the fact that the means of communications availed to him are less than ideal, and he invites the Court find that this mere fact violates Plaintiff's constitutional rights.[9]  However,

> Federal courts do not sit as supervising directors of the minutiae of state prison procedures. . . . Prison administrators are responsible for establishing rules and regulations to meet, as well as is practicable, the complex and intractable problems of prison existence. Precisely because the problems are so insoluble, courts defer to the expertise of the prison administrators and accord them broad discretion in the procedures they formulate. Only when a prison regulation or practice offends a constitutional guarantee will a federal court step in and uphold that fundamental right. . . . [Where] available methods of [legal] communication . . . are less than ideal, the procedures afforded by the State do not deprive [the inmate] of meaningful access to [courts even if] it is obvious that [the inmate] would prefer to communicate by telephone . . . [T]he State is not obligated to provide the best manner of access, nor is it obligated to equalize the financial resources of each of its inmates. The State is forced to establish rules to meet the overall needs of its inmate community. If a federal court were to intrude each time an individual inmate requested to be accorded special treatment, it would present an undue disruption on the State's administration of its prison system. So long as the State's procedure's meet constitutional minima, the courts should not second-guess them.

---

[9]  The Court notes, in passing, that Plaintiff's reliance on a state provision is of no relevance for the purposes of the First Amendment analysis, since a violation of state regulation, even if present, does not qualify as a constitutional violation.

Pino, 558 F. Supp. at 675.

In light of Plaintiff's failure to assert both actual injury and lack of alternative means of communications, his allegations based on denial of telephonic contacts with the judges and court personnel fail to state a claim. Plaintiff, however, will be allowed to file an amended complaint curing the shortcomings of his First Amendment claims.

### C.   EIGHTH AMENDMENT CLAIM

#### 1.   Failure-to-Protect Standard

Plaintiff has a protected right in being incarcerated at a place of confinement confirming to the standards set forth by the Eighth Amendment.  The Constitution "does not mandate comfortable prisons," Rhodes v. Chapman, 452 U.S. 337, 349 (1981), but neither does it permit inhumane ones, and it is now well settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993).  In its prohibition of "cruel and unusual punishments, the Eighth Amendment . . . imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials . . . must take reasonable measures to guarantee the safety of the inmates." Hudson, 468 U.S. at 526-527; see also Helling, 509 U.S. at 31-32; Washington v. Harper, 494 U.S. 210, 225 (1990); Estelle v. Gamble, 429 U.S. 97, 103 (1976).  The Eighth Amendment prohibits conditions

which involve the unnecessary and wanton infliction of pain or are grossly disproportionate to the severity of the crime warranting imprisonment.  See Rhodes, 452 U.S. at 346, 347.  The cruel and unusual punishment standard is not static, but is measured by "'the evolving standards of decency that mark the progress of a maturing society.'"  Id. at 346 (quoting Trop v. Dulles, 356 U.S. 86, 101 (1958)).

In light of the foregoing, prison officials have a duty under the Eighth Amendment to "'take reasonable measures to guarantee the safety of the inmates.'"  Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson, 468 U.S. at 526-27).  To state a failure-to-protect claim under 42 U.S.C. § 1983, an inmate must show that he is, as of now, or was in the past, objectively "incarcerated under conditions posing a substantial risk of serious harm," and that the defendant knew of and disregarded that risk.  Farmer, 511 U.S. at 837.  "The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id. Therefore, in order to prevail on his 42 U.S.C. § 1983 claim asserting that his constitutional rights are/were violated because of the actions of certain officers, Plaintiff must show that he either suffered an injury or there is an imminent threat to Plaintiff's health and/or

life.[10]  See Farmer, 511 U.S. at 837; Whitley v. Albers, 475 U.S.

312, 319 (1985).  In contrast,

> claims as to hypothetical dangers of certain prison
> conditions should be dismissed as speculative, since
> Plaintiff fails to state facts indicating an actual
> injury is imminent. "Factual allegations must be enough
> to raise a right to relief above the speculative level."
> Twombly, 127 S. Ct. at 1965; see Patterson v. Lilley,
> 2003 U.S. Dist. LEXIS 11097 (S.D.N.Y. June 20, 2003)
> (defendants could only be held liable for the existing
> injury or imminent, not a speculative future injury); see
> also Kirby v. Siegelman, 195 F.3d 1285 (11th Cir. 1999)
> (spelling out that a 42 U.S.C. § 1983 claim by a prisoner
> about his future condition cannot be deemed ripe for
> adjudication where the prisoner has not yet suffered--or
> is in immediate danger of--any injury).

Smith v. Atl. County, 2008 U.S. Dist. LEXIS 82819, at *20 (D.N.J.

Oct. 14, 2008); see also Pilkey v. Lappin, 2006 U.S. Dist. LEXIS

44418, at *46-47 (D.N.J. June 26, 2006) (since "plaintiff's claim

with respect to his potential future endangerment is . . .

speculative, the claim is not cognizable under the Eighth

Amendment"); Rouse v. Pauliilo, 2006 U.S. Dist. LEXIS 17225, at *10

(D.N.J. Apr. 5, 2006) ("Any claim not articulated in present terms

is unripe since it fails to make factual assertions and, thus, is

speculative").

### 2.   Plaintiff's Allegations

Plaintiff asserts that: (1) he is confined at the facility

housing inmates having "minimum security," "medium security" and

"maximum security" classifications; and (2) the prison officials

---

[10] In addition, to qualify for damages, Plaintiff must show
that he actually suffered at least some injury.

allow inmates having different security classifications to "commingle" by having "different 'levels' of inmates ea[]t meals together, have religious services, share bathrooms and even day areas.[11]   Compl. at 13. "Plaintiff asserts that he could easily become assaulted by . . . inmate[s with medium or maximum security classifications] during co[m]mingling." <u>Id.</u>

> Prison officials are aware that the "cell" locks can be "picked" utilizing a comb, without much effort. Plaintiff had his cell robbed on several occasions while "off post" eating or other activities out of the cell itself.  Plaintiff was assaulted in his cell on October 11, 2008.  Plaintiff received serious injuries, [resulting in] his transfer from the facility to the hospital wing.  . . . Plaintiff asserts that he could easily be assaulted while sleeping or otherwise in his "cell."  This can be . . . as [during the alleged October 11, 2006 assault,] where Plaintiff made numerous screams and pleas for help, no correctional officer arrived to assist Plaintiff until summed by Plaintiff's cell-mate. This was done after Plaintiff was required to hide under his bed to stop the assault.

<u>Id.</u> at 14.

### 3.   <u>Shortcomings of Plaintiff's Allegations</u>

#### a.   Assault-related Allegations

Plaintiff's statements with regard to the alleged October 11, 2008, assault suffer from two shortcomings.

First, the allegations suggest that Plaintiff was assaulted by another inmate housed at the facility (rather than by a prison officer), and his statements suggest that the prison officials were

_____

[11] The Complaint clarifies that the inmates having different classifications are housed, <u>i.e.</u>, have their sleeping quarters, in different wings of the facility.  <u>See</u>  Compl. at 13.

aware of the risk that such assault could occur because the prison officials facilitated the "commingling" policy allowing inmates having "minimal security" classification, like Plaintiff, to socialize with inmates having medium or maximum security classifications. See id. at 13-14. However, Plaintiff omitted to clarify whether he was, in fact, asserted by an inmate who had either medium or maximum security classification (and who gained assess to the sleeping quarters of minimum security inmates as a result of the "commingling" policy) or by another "minimum security" inmate who was properly in the minimum security area.  If anything, the Complaint suggests the latter scenario, since Plaintiff asserts that the inmates "commingle" only in day areas, bathrooms, cafeteria and places designated for religious services, not in their sleeping quarters.

Second, Plaintiff's allegations that the prison officials failed to interfere in Plaintiff's assault does not clarify whether any prison officer actually heard or otherwise knew of the alleged assault but declined to respond.  Indeed, as drafted, the Complaint suggests that Plaintiff's calls for help were inaudible/unknown to prison officials, since the prison officials, apparently, immediately responded to the assault once they were summoned by Plaintiff's cell-mate.  For these reasons, Plaintiff's allegations related to the alleged October 11, 2008, assault will be dismissed without prejudice to Plaintiff's filing an amended complaint curing

these deficiencies, if facts so allow.

Finally, Plaintiff's allegations based on hypothetical future assaults will be dismissed as speculative.[12] See Smith, 2008 U.S. Dist. LEXIS 82819, at *20; Pilkey, 2006 U.S. Dist. LEXIS 44418, at *46-47; Rouse, 2006 U.S. Dist. LEXIS 17225, at *10.

### c.   Theft-related Allegations

Plaintiff's claims based on the alleged theft by other inmates fail to state a claim and will be dismissed with prejudice for failure to meet the color of law requirement.[13]

Federal courts are courts of limited jurisdiction.   See Mansfield, C. & L. M. Ry. Co. v. Swan, 111 U.S. 379, 383 (1884). "[T]hey have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." Bender v. Williamsport Area School Dist., 475 U.S. 534, 541 (1986). A district court may exercise original jurisdiction over "Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under

---

[12]  Such dismissal will be with prejudice for the purposes of the instant matter but, obviously, without prejudice for the purposes of Plaintiff's future actions asserting immediate danger/actual injury, if any.

[13]  Plaintiff's exhibit "A" suggests Plaintiff's position that the alleged theft resulted from actions of other inmates. However, in the event Plaintiff wished to complain about theft by prison officials, his allegations fail to state a federal claim, since New Jersey provides a post-deprivation remedy for unauthorized deprivation of property by public employees.   See New Jersey Tort Claims Act, N.J. Stat. Ann. §§ 59:1-1, et seq. (2001).

their authority." U.S. Const. art. III., § 2; <u>see also</u> 28 U.S.C. § 1331.

Section 1983 of Title 42 of the United States Code authorizes a person such as Plaintiff to seek redress for a violation of his federal civil rights by a person who was acting under color of state law. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

To recover under 42 U.S.C. § 1983, a plaintiff must show two elements: (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) *the deprivation was done under color of state law.* <u>See</u> <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988); <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 152 (1970); <u>Sample v. Diecks</u>, 885 F.2d 1099, 1107 (3d Cir. 1989). "The color of state law . . . is a threshold issue; there is no liability under [Section] 1983 for those not acting under color of law." <u>Id.</u> at 638. The color of state law element in a section 1983 action requires that "the conduct allegedly causing the deprivation of [the plaintiff's rights] be fairly attributable to the State." <u>Lugar v. Edmonson Oil Co.</u>, 457 U.S. 922, 937 (1982).

For the conduct to be "fairly attributable" to the State, (1) the deprivation must be caused by (a) the exercise of some right or privilege created by the State or (b) by a rule of conduct imposed by it or by a person for whom the State is responsible, and (2) the defendant must be a person who may fairly be said to be a state actor, either because the person (a) is a state official, (b) acted together with or has obtained significant aid from state officials, or (c) performed conduct otherwise chargeable to the State. See id. at 936-39.

Since prisoners stealing property from other prisoners do not qualify as persons acting under color of law, see Lugar, 457 U.S. at 936-39, Plaintiff's theft-based claims will be dismissed with prejudice.

**V.    CONCLUSION**

For the reasons set forth above, the Complaint will be dismissed in its entirety, as against all Defendants, for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Plaintiff's Fourth Amendment claims based on the search conducted upon Plaintiff's admission to the facility will be dismissed with prejudice. Plaintiff's Fourth Amendment claims based on unspecified other searches at the facility will be dismissed without prejudice. Plaintiff's First Amendment claims will be

dismissed without prejudice.  Plaintiff's Eighth Amendment claims based on the alleged October 11, 2008, assault will be dismissed without prejudice.  Plaintiff's remaining Eighth Amendment claims will be dismissed with prejudice.

An appropriate order accompanies this Opinion.

s/Renée Marie Bumb
**Renée Marie Bumb**
**United States District Judge**

Date: December 4, 2008